UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HUTCHINSON SEALING SYSTEMS, INC. | Case No. |
| *Plaintiff,* | Hon. |
| v. | |
| ADVANCED CONTROL SOLUTIONS & AUTOMATION, INC. | |
| *Defendant.* | |

## COMPLAINT AND JURY DEMAND

Plaintiff Hutchinson Sealing Systems, Inc. ("Hutchinson"), submits the following Complaint against Defendant Advanced Control Solutions & Automation, Inc. ("ACS"):

### PARTIES

1. Hutchinson is a Delaware corporation with its principal place of business at 3201 Cross Creek Parkway, Auburn Hills, Michigan 48326.

2. Upon information and belief, ACS is an Ohio corporation with its principal place of business at 1400 Williams Drive, Marietta, GA 30066.

### JURISDICTION AND VENUE

1

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this Complaint states an action that is between citizens of different states and, as set out below, involves an amount in controversy that exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over ACS because ACS has established minimum contacts with the State of Michigan by entering into a substantial purchase order contract with a Michigan based company, such that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

5. This Court also has personal jurisdiction over ACS because ACS agreed to submit any action arising out of the parties' purchase order contract to the exclusive jurisdiction of this Court in this District and waived its right to challenge this Court's personal jurisdiction over it. (**Exhibit A**, Hutchinson's General Terms and Conditions at ¶¶ 27.1.1–27.1.2.):

> 27.1 **Jurisdiction and Applicable Law.**
>
> 27.1.1 If the location of Buyer from which this Order issued is in the United States of America: (i) this Order shall be interpreted and enforced in accordance with the local, domestic laws of the State of Michigan, exclusive of the choice of law rules thereof; and (ii) Oakland County Circuit Court or, if subject matter jurisdiction is met, the United States District Court for the Eastern District of Michigan, shall have exclusive jurisdiction and venue over any lawsuit arising out of or related to this Order.
>
> 27.1.2 Seller irrevocably waives and agrees not to raise any objection it might now or hereafter have to any such claim or proceeding in any court having jurisdiction under this Section, including any objection that the place where such court is located is an inconvenient forum or that there is any other claim or proceeding in any other place relating in whole or in part to the same subject matter.

6. Venue in this District is proper under 28 U.S.C. § 1391(b)(3) because this Court has personal jurisdiction over ACS, and the parties agreed that they would submit any action arising out the Contract to this Court in this District. *See id.*

## GENERAL FACTUAL ALLEGATIONS

7. Hutchinson is a Michigan-based manufacturer of automotive parts and components with manufacturing facilities across the United States.

8. Upon information and belief, ACS is a distributor of automation products and services such as mobile robots used to automate internal transportation and logistics processes in manufacturing facilities.

9. In September 2020, Hutchinson purchased three MiR200 autonomous mobile robots (the "Robots") from ACS as well as various accessories, enhancements and add-ons to be used in Hutchinson's Church Hill, Tennessee manufacturing facility which manufactures automotive body sealing components. (**Exhibit B**, PO No. P097845) ("Purchase Order.")

10. Hutchinson purchased the Robots to transport finished product from the production line to the warehouse, with the objective of increasing efficiency, optimizing labor and personnel and lowering costs through automation.

11. Before purchasing the Robots, ACS visited the Church Hill facility in order to acquire first-hand knowledge of the plant's automation needs and

requirements in order to provide specific recommendations on the appropriate robot type and functionality for Hutchinson's particular uses in the Church Hill plant and operating environment.

12. After ACS's visit, and after being made fully aware of Hutchinson's performance, reliability and durability needs and the intended use, ACS specifically recommended that Hutchinson purchase the Robots.

13. In reliance on ACS's visit and assessment of the Church Hill facility, Hutchinson purchased the Robots based on ACS's expertise, skill, knowledge and specific recommendation. (**Ex. B**, PO No. P097845.)

### The Chronic Robot Performance Issues ACS Failed to Fix

14. Soon after delivery of the Robots, Hutchinson experienced chronic performance, functionality, downtime, accuracy, and reliability issues that prevented Hutchinson from using the Robots for their intended purpose.

15. These issues included, by way of example, general software and connectivity issues to wheel slippage, battery charging and relating safety concerns, and pathing and mapping issues that negatively impacted Robot functionality, performance, efficiency, availability and safety.

16. The Robots' buggy software negatively impacted the Robots' functionality, performance, efficiency, availability and safety.

17. The Robots' low-quality hardware, including the wheels, cameras and sensors, also significantly impacted Hutchinson's ability to efficiently deploy the Robots without constant maintenance and attention on the production line.

18. In an effort to find solutions, Hutchinson spent additional resources to improve the Robots' performance at the Church Hill facility, including implementing recommendations by ACS to address the hardware quality issues. Unfortunately, these recommendations and claimed solutions did not fix the underlying hardware quality issues.

19. Additionally, in July 2021, Hutchinson received a Safety Notice revealing that the Robot batteries were at risk of overheating, with a possibility of catching fire, if the battery experienced a so-called "deep discharge." (**Exhibit C**, Safety Notice.)

20. In response to this "deep-discharge" issue, a mandatory software update was released for the Robots that limited the battery charge to just 50%.

21. To ensure that the Robots could perform as required to support production at the Church Hill facility, Hutchinson purchased an extra battery for each Robot.

22. Thus, when the software update was released, the Robots' utilization and efficiency was cut by half. As a result, the Robots failed to supply the performance and efficiency as ACS promised.

23. To this day, ACS has not yet provided Hutchinson with replacement batteries for the Robots.

24. As a result of the systemic and unresolved software, hardware and battery problems, Hutchinson has been unable to launch the Robots into production despite performing extensive trial runs and corrective actions.

### The Contract Promises

25. The Purchase Order for the Robots incorporated Hutchinson's General Terms and Conditions (the "T&Cs") (together the Purchase Orders and T&Cs are referred to as the "Contract") (**Ex. A, Ex. B.**)

26. ACS agreed in the Contract to provide express and implied warranties, including that the Robots and associated software will "conform to all specifications, drawings, samples and other descriptions furnished by Buyer or otherwise part of the Order" were "selected, designed (to the extent designed by Seller), manufactured and assembled by Seller based upon Buyer's use," and were "fit and sufficient for the purposes intended by Buyer and in the location and environment in which the

Product will be used, which purposes, location and environment are known to Seller." (**Ex. A, ¶ 9.**)

27. ACS was aware of Hutchinson's performance, reliability and durability needs and the intended use of the Robots before ACS recommended and sold the Robots to Hutchison.

28. ACS accepted the Contract when it supplied the Robots to Hutchinson.

29. ACS also agreed that Hutchinson's remedies under the Purchase Order "will be cumulative with and in addition to all other legal or equitable remedies," and that Hutchinson is entitled to its attorney fees in any action "arising out of this Order unless Seller is the prevailing party." (**Ex. A, ¶ 26.**)

30. Hutchinson has spent many man hours and invested money and other resources into working with ACS (and independently) to find permanent solutions to these problems, but ACS has failed to meaningfully address them.

31. As a result of the defective Robots, Hutchinson has incurred significant costs, losses and damages for which ACS is responsible including, but not limited to:

   a. Costs incurred for the Robots, accessories and software.

   b. Costs incurred for extra add-ons and fixes to address low quality hardware issues.

      c. Costs incurred for ACS to visit the Church Hill facility to diagnose issues and to repair equipment.

      d. Costs incurred for labor because the Robots never launched into production.

32. After many months of unresolved chronic performance issues and ACS's inability to address those issues and other safety concerns, on March 25, 2022, Hutchinson communicated a demand to ACS which articulated in detail, with supporting documentation, the extensive and performance issues, ACS's obligations and breach, and associated costs and the damages resulting from the non-conforming and defective Robots.

33. In response, ACS ignored and misstated its contractual and legal obligations and denied all responsibility for Hutchinson's claims and damages.

34. On June 16, 2022, Hutchinson presented a final demand to ACS which ACS rejected and denied, but coupled with a meaningless proposal for a future one-time, "free of charge" visit to Hutchinson to make "recommendations" regarding the Robot performance and safety issues it has repeatedly failed to acknowledge, diagnose or address in contravention of the applicable contracts, terms, warranties, statutes and law.

**COUNT I - BREACH OF CONTRACT**

35. Hutchinson restates all of the preceding paragraphs of this Complaint.

36. The Contract is a valid, enforceable contract supported by consideration.

37. Hutchinson at all relevant times performed its obligations under the Contract.

38. ACS breached the Contract with Hutchinson by, among other things:

   a. Supplying defective Robots;

   b. Failing to adequately identify, diagnose and correct the extensive functional, performance, hardware, software, durability and safety issues with the Robots; and

   c. Failing to reimburse Hutchinson for its costs, losses and damages associated with the defective robots incurred by Hutchinson.

39. All conditions precedent to Hutchinson's enforcement to the Contract have occurred or have been met.

40. ACS has actual notice of the defective Robots and its breaches of Contract.

41. Hutchinson has suffered compensable damages because of ACS's breaches of the Contract.

42. ACS is liable to Hutchinson for its damages.

**WHEREFORE** Hutchinson requests this Court enter Judgment in its favor and against ACS for its monetary damages, for the attorneys' fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances.

## COUNT II - BREACH OF EXPRESS WARRANTY

43. Hutchinson restates all of the preceding paragraphs of this Complaint.

44. The Contract contains the following express warranties:

    a. That the Robots and associated software will "conform to all specifications, drawings, samples and other descriptions furnished by Buyer or otherwise part of the Order" (**Ex. A**, T&C, ¶ 9.)

    b. That the Robots and associated software were "selected, designed (to the extent designed by Seller), manufactured and assembled by Seller based upon Buyer's use," (*Id.*)

    c. That the Robots and associated software are "fit and sufficient for the purposes intended by Buyer and in the location and environment in which the Product will be used, which purposes, location and environment are known to Seller." (*Id.*)

45. The Robots supplied by ACS were defective and non-conforming, and failed to perform consistent with the express warranties made by ACS.

46. These persistent failures to perform as promised constituted a breach of the express warranties in the Contract.

47. All conditions precedent to Hutchinson's enforcement of the Contract have occurred or have been met.

48. ACS has actual notice of the defective Robots and breaches of the express warranties.

49. As a result of ACS's ongoing and substantial breaches of the express warranties, Hutchinson has suffered significant damages.

50. ACS is liable to Hutchinson for its damages.

**WHEREFORE** Hutchinson requests this Court enter Judgment in its favor and against ACS for its monetary damages, for the attorneys' fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances.

## COUNT III - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

51. Hutchinson restates all of the preceding paragraphs of this Complaint.

52. ACS is a merchant with respect to the Robots it supplied to Hutchinson.

53. ACS's sale of the Robots to Hutchinson included an implied warranty of merchantability as provided in MCL § 440.2314.

54. Pursuant to this implied warranty of merchantability, the Robots had to pass without objection in the trade and be fit for the ordinary purposes for which the Robots are to be used, which purposes were known to ACS.

55. ACS breached the implied warranty of merchantability by, among other things, supplying defective Robots that were not merchantable and not fit for the ordinary purpose for which the Robots are used.

56. ACS has actual notice of the defective Robots and its breach of the implied warranty of merchantability.

57. As a result of ACS's breaches of the implied warranty of merchantability, Hutchinson has suffered damages.

58. ACS is liable to Hutchinson for its damages.

**WHEREFORE** Hutchinson requests this Court enter Judgment in its favor and against ACS for its monetary damages, for the attorneys' fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances.

**COUNT IV - BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

59. Hutchinson restates all of the preceding paragraphs of this Complaint.

60. ACS's sale of the Robots to Hutchinson included an implied warranty of fitness for a particular purpose as provided in MCL § 440.2315.

61. Pursuant to the implied warranty of fitness for a particular purpose ACS warranted that the Robots were fit and sufficient for their intended purpose and particular purpose.

62. ACS knew the intended and particular purpose for which Hutchinson procured the Robots.

63. Hutchinson relied upon the skill and judgment of ACS in selecting and purchasing the Robots from ACS.

64. The Robots supplied by ACS were defective and not fit for their particular and intended purpose. Accordingly, ACS breached the implied warranty of fitness for a particular purpose.

65. ACS has actual notice of the defective Robots and its breach of the implied warranty of fitness for a particular purpose.

66. As a result of ACS's breaches of the implied warranty of fitness for a particular purpose, Hutchinson has suffered damages.

67. ACS is liable to Hutchinson for its damages.

**WHEREFORE** Hutchinson requests this Court enter Judgment in its favor and against ACS for its monetary damages, for the attorneys' fees and costs associated with this action, all interest allowable on such awards at the maximum rate allowed by law, plus all incidental and consequential damages, and for such other and further relief as may be just and proper under the circumstances.

### Jury Demand

Hutchinson respectfully demands a trial by jury on all issues triable by jury.

Dated: July 13, 2022

Respectfully submitted,

By: /s/ Madeline E. Leamon
Herbert C. Donovan (P51939)
Madeline E. Leamon (P83707)
Brooks Wilkins Sharkey & Turco PLLC
401 S. Old Woodward, Suite 400
Birmingham, MI 48009
248.971.1800
donovan@bwst-law.com
leamon@bwst-law.com
*Attorneys for Hutchinson Sealing Systems, Inc.*