# EXHIBIT A

1. **The Products and Parties Covered by the Order**

    1.1 **Products.** These General Terms and Conditions apply to the purchase of the goods and/or services ("Products") identified in a purchase order issued by Buyer to Seller which references these Terms.

    1.2 **Parties**. The Buyer and Seller are identified on the face of the purchase order.

*back to top*

2. **The Terms of the Order**

    2.1 **Terms of the Order**. The Order consists of the following, which are sometimes referred to collectively as the Terms of the Order: (i) the purchase order; (ii) material releases issued by Buyer to Seller under the purchase order (iii) these General Terms and Conditions; (iii) all other documents specifically incorporated into or otherwise made a part of this Order by Buyer; and (iv) Buyer's Policies, as revised by Buyer from time to time. Buyer's Policies include Buyer's Supplier Requirements Manual and may be found at http://www.hutchinsonsealing-purchasing.com or by contacting Buyer's assigned purchasing representative. Seller is responsible for keeping current regarding the terms of Buyer's purchasing Policies.

    2.2 **Seller Acceptance**. The Order is an offer by Buyer to purchase the Products from the Seller consistent with the Terms of the Order. The contract is formed when the Seller accepts the offer of the Buyer. This occurs upon the earlier of: (a) the Seller beginning work or performance; or (b) the Seller notifying the Buyer of its acceptance of the offer. The Order is limited to and conditional upon Seller's acceptance of these Terms exclusively.

    2.3 **Seller's Terms Rejected**. The Order does not constitute an acceptance of any offer or proposal made by Seller, and Seller acknowledges that: (i) a request for quotation or similar document issued by Buyer is not an offer by Buyer; and (ii) any response by Seller to a request for quotation or similar document issued by Buyer is not an offer by Seller. Any additional or different terms proposed by Seller, whether in Seller's quotation, acknowledgement, invoice or otherwise, are unacceptable to Buyer, are expressly rejected by Buyer, and are not part of the Order.

    2.4 **Entire Agreement**. The Order is the entire agreement between the parties respecting the Products and, when accepted, supersedes any prior agreements, negotiations or understandings of the parties respecting the Products, whether written or oral. No modification shall be effective unless in writing and signed by Buyer's authorized representative. The Order may be modified only by a writing signed by an authorized representative of Buyer.

*back to top*

3. **Quantity; Blanket Orders; Material Releases; Service Parts**

    3.1 **Releases**. Unless expressly specified differently in the Order, Seller shall deliver Products in strict conformance with the dates, times, quantities and delivery locations determined by Buyer and identified as firm orders in material authorization releases as set forth in applicable vendor schedules, manifests, broadcasts or similar releases ("Material Releases"). Time and quantities are of the essence under the Order and Seller agrees to 100% on-time delivery of the quantities and at the times specified by Buyer. Seller shall not fabricate any of the Products or procure any of the materials required in their fabrication, and Buyer shall have no obligation as to the same, except to the extent expressly authorized in Material Releases.

    3.2 **Requirements Contract Unless Otherwise Specified**. Unless the order expressly requires the Seller to manufacture, ship, deliver or provide a specified quantity of Goods, the Order is a requirements contract requiring Buyer to purchase and Seller to sell Buyer's requirements of Products. Buyer's requirements are determined by the needs of Buyer's customers and those needs may change from time to time.

    3.3 **Service and Replacement Parts**. During the 15-year period after Buyer completes current model purchases, Seller will sell Products to meet Buyer's past model service and replacement parts requirements. Unless otherwise agreed to by Buyer, the price during the first ten years of this period shall be those in effect at the conclusion of current model purchases. For an additional five years, or so long as Buyer's customer requires service parts, whichever is longer, (or a different period if agreed in writing by both parties), the Seller will sell Products to Buyer in order to fulfill Buyer's past model service and replacement parts requirements, at prices equal to the most recent production prices under the Order taking into account actual, documented differences in the cost of materials, packaging, and costs of production after any of Buyer's current model purchases have been completed, as mutually and reasonably agreed by the parties. If the Products are systems or modules, Seller will sell each component or part at a price that does not, collectively, exceed the system or module price specified in the Order, less assembly costs, plus any actual cost differential for packaging.

    3.4 **EDI**. Buyer may require Seller to participate in electronic data interchange or similar inventory management program, at Seller's expense, for notification of Material Releases, shipping confirmation and other information.

*back to top*

4. **Shipping and Delivery**

    4.1 **Buyer Requirements**. Seller will properly pack, mark, and ship Products (and provide related documentation) according to the requirements of Buyer, the involved carriers and the country of destination. Seller will promptly provide Buyer with, in the form requested by Buyer, the identity and amount of all ingredients (and any changes in the ingredients) of the Products.

    4.2 **Hazardous Materials**. Before and at the time Products are shipped, Seller will give Buyer sufficient warning in writing (including appropriate labels on all Products, containers, and packing, including without limitation disposal and recycling instructions, material

safety data sheets and certificates of analysis) of any hazardous or restricted material that is an ingredient or part of the Products, together with any special handling instructions that are needed to advise carriers, Buyer, and their employees how to take appropriate measures while handling, transporting, processing, using or disposing of the Products, containers, and packing. Seller agrees to comply with all Laws, as defined below, relating to such materials.

4.3 **Country of Origin.** Seller agrees to fulfill any customs or NAFTA related obligations, origin marking or labeling requirements, and local content origin requirements. Export licenses or authorizations necessary for the export of Products are Seller's responsibility unless otherwise stated in the Order, in which case Seller will provide the information necessary to enable Buyer to obtain the licenses or authorizations. Seller will promptly notify Buyer in writing of any material or components used by Seller in filling the Order that Seller purchases in a country other than the country in which the Products are delivered. Seller will furnish any documentation and information necessary to establish the country of origin or to comply with the applicable country's rules of origin requirements. Seller will promptly advise Buyer of any material or components imported into the country of origin and any duty included in the Products' purchase price. If Products are manufactured in a country other than the country in which Products are delivered, Seller will mark packaging for the Products to reflect Products "Made in [country of origin]." Seller will provide to Buyer and the appropriate governmental agency the documentation necessary to determine the admissibility and the effect of entry of Products into the country in which Products are delivered. Seller warrants that any information that is supplied to Buyer about the import or export of Products is true and that all sales covered by the Order will be made at not less than fair value under the anti-dumping laws of the countries to which the Products are exported.

4.4 **Risk of Loss, Title and Right to Possession**

4.1 **Risk of Loss**: All shipments are at the risk of Seller until receipt at Buyer's location or other final destination designated in an Order or other writing by Buyer, regardless of the F.O.B. delivery point pursuant to the delivery terms unless risk is otherwise assumed by Buyer in writing. Seller shall insure the Goods at their replacement value for the benefit of Seller and Buyer as their interest may appear and provide to Buyer proof thereof. If risk of loss is assumed by Buyer, all risk casualty insurance for replacement value must be provided by Seller for the benefit of Buyer. The cost of any insurance shall be paid by Seller unless otherwise agreed in writing by Buyer. Under no condition will the risk of loss be that of Buyer, unless such insurance is provided. Risk of loss shall not be governed by transfer of title.

4.2 **Title to Goods:** Title to all Goods shall vest in Buyer the earlier of the date of an Order and their identification to an Order. Identification shall occur not later than the date Seller acquires or begins manufacture of the Goods. Buyer's obligation to pay for Goods is limited by terms of the Order. Seller shall pay all taxes related to ownership, possession or storage of the Goods until Buyer takes possession of the Goods.

4.3 **Right to Possession:** Buyer has the right to possession of all Goods at all times from the time the Goods are identified to the Order whether or not Seller is in default subject to Buyer's obligation to pay for the Goods upon obtaining possession. This right is separate and apart from any security interest.

4.5 **Delay in Delivery**. If Seller, for any reason, does not comply with Buyer's delivery schedule, or any other requirement of a Material Release, Buyer may (a) approve a revised delivery schedule; (b) require shipment of any of the Products by a more expeditious method of transportation; or (c) cover, and adjust any quantity requirement under the Order accordingly. Buyer's rights under this section are at Seller's sole expense, at Buyer's sole discretion and in addition to and without prejudice to any other right or remedy available to Buyer.

*back to top*

5. **Price and Payment**

5.1 **Price**. The purchase price of the Products is set forth on the face of the purchase order. Unless otherwise stated in the Order, the purchase price: (i) is a firm fixed price for the duration of the Order and not subject to increase for any reason, including, but not limited to, increased raw material costs, increased labor or other manufacturing costs, increased development costs, currency fluctuations or changes in volumes from the volumes estimated or expected; (ii) Is inclusive of all federal, state, provincial, and local taxes and any duties applicable to provision of the Products; (iii) Is inclusive of all storage, handling, packaging and all other expenses and charges of Seller.

5.2 **Invoices**. Unless otherwise stated in the Order, invoices shall be issued on or after delivery of the Products to Buyer and payment shall be deemed to occur upon mailing of a check or, when and where applicable, transfer of funds by wire, to Seller. All payment shall be made in U.S. dollars unless otherwise agreed. Seller shall, at its expense, comply with Buyer's instructions and policies with respect to the form, content and method for submission of invoices.

5.3 **Payment Terms**. Unless otherwise stated in the Order, Seller shall pay invoices for Products which are properly presented and not subject to dispute. Payment terms shall be Net 30th Prox, that is, payment shall be made on the last business day of the second month following the month in which the invoice is dated.

5.4 **Set Off**. In addition to any right of setoff or recoupment provided by law, Buyer or Buyer's affiliated companies shall be entitled at any time to set off or recoup against sums payable by Buyer or its affiliates to Seller any amounts for which the Buyer or its affiliates determine in good faith the Seller is liable to it under any Order or other agreements with the Seller. The Buyer may do so without notice to the Seller.

5.5 **Payment Not Acceptance**. Payment for Products shall not constitute acceptance of non-conforming Products, nor will it limit or affect any rights or remedies of Buyer.

5.6 **Credits**. Credits or benefits resulting from the Order, including trade credits, export credits or the refund of duties, taxes, or fees, belong to Buyer. Seller will provide all information and certificates (including NAFTA Certificates of Origin) necessary to permit Buyer (or Buyer's customers) to receive these benefits or credits.

*back to top*

6. **Non-Conforming Products**

   6.1 **Rejection**. If defective or non-conforming Products are shipped to and rejected by Buyer, the quantities under the Order will be reduced unless Buyer otherwise notifies Seller, and Seller will not replace reduced quantities without a new Material Release from Buyer. Following rejection, Seller shall, without prejudice to any other right or remedy of Buyer, and at Buyer's sole discretion and at Seller's sole expense:

   6.1.1 accept return of the Products to Seller at full invoice price, plus transportation charges; or

   6.1.2 replace the Products with conforming Products;

   6.1.3 correct at any time prior to shipment from Buyer's plant Products that fail to meet the requirements of the Order.

   6.2 **Buyer Losses**. The Seller is liable for all direct, incidental and consequential damages, losses, costs, and expenses incurred by the Buyer resulting from Seller's failure to deliver conforming and non-defective Products or to comply with the shipping and delivery or other requirements of the Buyer, even if the Seller has cured the failure. This includes but is not limited to compensating Buyer for:

   6.2.1 any amounts charged or debited by Buyer's customer(s) to Buyer;

   6.2.2 all costs of containment, sorting, repair, replacement, cure, cover, or any other costs incurred by Buyer, determined in such manner and in such amount as is reasonably determined by Buyer;

   6.2.3 all costs of any recall campaign, corrective service action, or other voluntary or involuntary action in which Buyer or any customer of the Buyer participates related to the Products;

   6.3 **Corrective Action**. Promptly upon learning of defective or non-conforming Products, Seller will develop, document and implement corrective actions in accordance with all applicable quality control policies and standards of Buyer and its customers.

*back to top*

7. **Buyer and Industry Standards and Policies**

   7.1 Seller will conform to all quality control and other standards and inspection systems as established or directed by Buyer and Buyer's customer for the Products and goods and services similar to the Products. These include without limitation those set forth in Buyer's Supplier Requirements Manual, quality control policies, ISO 9001:2000 or ISO/TS 16949:2002 quality certification, OSHA 18001 health and safety certification and ISO 14001 environmental certification including registration. Seller will also participate in Buyer's supplier quality and development programs as directed by Buyer. These programs and standards may be found at **http://www.hutchinsonsealing-purchasing.com** or by contacting Buyer's assigned purchasing representative. If there is conflict between any part of the above programs or standards and an express provision of these Terms, these Terms will control.

   7.2 To the extent any of the standards, policies or systems cited above are amended, supplemented or replaced, Seller's obligations under this Order shall automatically be amended.

*back to top*

8. **Changes**

   8.1 **Buyer Changes**. Buyer reserves the right to make a change to the Products, including the design, specifications, engineering level, materials, packaging, shipping date, or time or place of delivery. Seller will promptly make any such change.

   8.2 **Seller Changes**. Seller will not make any change to the Products or process except at Buyer's written instruction or with Buyer's written approval. If Seller learns of a potential change to the Products or process that may reduce costs, improve quality, or otherwise be beneficial to Buyer, Seller shall inform Buyer of the potential change.

   8.3 **Impact on Cost** The Seller will promptly notify the Buyer in writing if a change directed or approved by Buyer will affect cost or timing and provide substantiation of its claim. If the Buyer determines that an adjustment is appropriate, the Buyer and the Seller will negotiate in good faith on an equitable price adjustment (up or down), a change in shipping or delivery terms, or other appropriate adjustment. If the Buyer determines that no adjustment is appropriate, it will so advise the Seller.

*back to top*

9. **Warranties**

   9.1 In addition to any other express and implied warranties provided by law or otherwise, Seller warrants to Buyer, Buyer's customer(s) and their respective successors and assigns that each Product shall:

- 9.1.1 be new and conform to this Order in all respects;

- 9.1.2 conform to all specifications, drawings, samples and other descriptions furnished by Buyer or otherwise part of the Order;

- 9.1.3 be free from all defects in design (to the extent designed by Seller), workmanship and materials and be of highest quality and workmanship;

- 9.1.4 be selected, designed (to the extent designed by Seller), manufactured and assembled by Seller based upon Buyer's use and be fit and sufficient for the purposes intended by Buyer and in the location and environment in which the Product will be used, which purposes, location and environment are known to Seller.

- 9.1.5 conform to all applicable Laws (as defined in Section 24) in countries where the Products (or goods into which the Products are incorporated) are to be sold, including without limitation, in the case of Products used in connection with the manufacture of motor vehicles, the National Traffic and Motor Vehicle Safety Act, United States motor vehicle safety standards and European Union Directive 2000/53/EC;

9.2 For all services, Seller further warrants that its work will be performed in a professional and workmanlike manner, consistent with all standards and specifications agreed on with Buyer and otherwise consistent with industry standards.

9.3 Seller also warrants that title to all of the Products shall be vested in Buyer free and clear of any and all liens and encumbrances of whatsoever nature and kind.

9.4 All warranties of Seller extend to future performance of the Products and are not modified, waived or discharged by delivery, inspection, tests, acceptance and payment or by Buyer's approval of any design, drawing, material, process or specifications will not relieve Seller of these warranties. Seller waives any right to notice of breach.

9.5 The warranty period is the longest of: four years from the date Buyer accepts the Products; the warranty period provided by applicable law; or the warranty period offered by Buyer or Buyer's customer to end-users for the products into which the Products are incorporated.

9.6 Seller will immediately notify Buyer in writing when it becomes aware of any ingredient, component, design or defect in the Products that is or may become harmful to persons or property.

9.7 Seller acknowledges that Buyer supplies parts to automobile manufacturers and suppliers in North America, and that Buyer is required to participate in the warranty share programs of each such automobile manufacturer and supplier that is a Buyer customer (the "WSP").Seller agrees that, by producing and supplying the Products associated with this Order, Seller will participate in the WSP as set forth herein, and will indemnify and hold Buyer harmless for any costs or losses allocated to Buyer pursuant to a customer WSP which are attributable, in whole or in part, to a part or tool supplied by Seller pursuant to this Order. Seller's WSP indemnification obligations shall apply regardless of any contradictory or competing term or condition contained in any communication by Seller to Buyer, or any purported disclaimer by the Seller of its participation in any WSP, which are hereby expressly rejected.
Upon a Buyer customer having allocated to Buyer costs pursuant to its WSP which costs are attributable, in whole or in part, under the terms and definitions of the WSP to a Product or tool supplied by Seller pursuant to this Order, Seller agrees that Buyer is entitled to immediately deduct such cost and amount from any payment due or to become due to Seller from Buyer. In the event Buyer has no payment obligation or balance owed to Seller against which to deduct such costs, Buyer shall invoice Seller for the costs assessed against Buyer pursuant to the terms of its customer's WSP, which invoice shall be paid in full by Seller within ten (10) days after Buyer has supplied to the Seller documentation confirming the costs allocated to Buyer pursuant to its customer's WSP. Seller shall indemnify Buyer for all costs and expenses incurred by Buyer that are reasonably related to or attributable, in whole or in part, to a part or tool supplied by Seller to Buyer pursuant to this Order.

*back to top*

10. **Indemnification**

    10.1 Seller agrees to indemnify, defend and hold harmless the Buyer, its affiliates, customers (both direct and indirect, including manufacturers of vehicles in which Products are incorporated), dealers and users of the products sold by Buyer (or the products in which they are incorporated) and all of their respective agents, successors and assigns, and each of their shareholders, directors, officers, employers and agents, on demand, (collectively "Indemnified Parties") from and against any and all costs, fees, penalties, damages (consequential and otherwise), actual attorneys' fees and all other liabilities and obligations whatsoever ("Losses"), arising out of any third party claim which, in whole or in part, arises from or relates to any actual or alleged:

    - 10.1.1 defect or non-conformity in the Products;

    - 10.1.2 noncompliance by Seller with any of its representations, warranties or obligations under the Order;

    - 10.1.3 negligence or fault of the Seller in connection with the design or manufacture of the Products;

    - 10.1.4 any spill, discharge or emission of hazardous wastes or substances which relates to, in whole or in part, the Products;

    - 10.1.5 any recall campaign, corrective service action, or other voluntary or involuntary action in which Buyer or any customer participates in connection with the Products or the inclusion of Products in goods sold by Buyer; and/or

    - 10.1.6 infringement (including claims of direct or contributory infringement or inducement to infringe) of any Intellectual Property Right relating to Products provided by Seller, even if they are made to Buyer's specifications;

  10.1.7 damages to the property of or personal injuries to Buyer, its customer, their respective agents, or any other person or entity to the extent arising from or in connection with Seller's work on Buyer's or Buyer's customer's premises or Seller's use of Buyer's or Buyer's customer's property;

  10.1.8 challenge to the Buyer's sole right, title and interest in the Tooling (as defined below), or right to possession of the Tooling, brought by any third party, including toolmakers, subcontractors, and lending institutions;

  10.1.9 charge or debit related in whole or in part to the Product issued to or against the Buyer from Buyer's customer pursuant to the customer's warranty share or allocation program, whether fault or non-fault based.

10.2 If Seller is obligated to indemnify under this section, then Buyer may, at its option participate in and/or direct the defense of any Third Party claim with its own counsel, at Seller's expense.

10.3 To the maximum extent permitted by applicable law, Seller's obligation under this Section will apply even as to Losses caused in part by an Indemnified Party's negligence, but Seller's indemnification shall not apply to the extent that Losses resulted solely and directly from the negligence or willful misconduct of such Indemnified Party. Seller's obligation to defend and indemnify under this Section will also apply regardless of whether the claim arises in tort, negligence, contract, warranty, strict liability or otherwise. The indemnification obligation under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the benefit of Seller under Workers' Compensation Acts, occupational disease acts, disability benefits acts or other employee benefits acts.

*back to top*

11. **Inspection and Audit**

 11.1 **Inspection**. Buyer may enter Seller's facility at any time upon reasonable notice to inspect the facility, Products, materials, and any of Buyer's property related to the Order. Buyer's inspection does not constitute acceptance of any work-in-process or finished goods and does not relieve Seller of any of its responsibilities or warranties.

 11.2 **Audit**. Upon reasonable notice to Seller, either Buyer or its direct or indirect customers (or a third party designee) may audit Seller's production facility, Products and any other Buyer property (including all pertinent documents, data and other information) related to the Order for the purpose of verifying Seller's costs and its compliance with its obligations under the Order.

 11.3 **Financial Review**. Upon reasonable notice to Seller, Buyer or a third party designated by Buyer may review the financial condition of Seller and its affiliate(s). Seller will fully cooperate in such review and will promptly provide copies of or access to all requested documents, including, without limitation, financial records and statements, forecasts, business plans, banking contacts and loan documents, and will make its financial managers available for discussions during reasonable business hours. Buyer and any designated third party will keep confidential any nonpublic information about Seller obtained in a financial review and use such information only for purposes of the review, except as needed to enforce the Order.

 11.4 **Subcontractors**. Seller will ensure that the terms of its contracts with its subcontractors provide Buyer and its customers with all of the rights specified in this Section.

*back to top*

12. **Customer Requirements**

 12.1 As directed by Buyer in writing, Seller agrees to comply with the applicable terms of any agreements, including warranty and warranty share agreements, between Buyer and its customer(s) to which Buyer provides the Products (as incorporated into products supplied to such customer(s)). Seller will meet all disclosed customer terms or requirements applicable to the extent within Seller's control. By written notice to Seller, Buyer may elect to have the provisions of this Section prevail over any conflicting term of the Order.

 12.2 In the event that Buyer's customer files or has filed against it a petition in bankruptcy or insolvency and, in the course of such proceeding, Buyer permits a reduction in the price(s) paid to Buyer for products incorporating the Products, the price paid by Buyer to Seller for the Products from and after the date of such reduction will be adjusted proportionally through negotiation and the mutual agreement of Buyer and Seller, and the Order will otherwise remain in effect without modification.

 12.3 If Buyer's customer directed, recommended, requested, suggested or otherwise identified Seller as the source from whom Buyer is to obtain the Products: (a) Buyer will pay Seller for the Products only following and to the extent of Buyer's actual receipt of payment from that customer for those goods in which the specific Products are incorporated, and any lengthening of that customer's payment terms to Buyer will automatically lengthen the payment terms as between Buyer and Seller by an identical amount of time; (b) within three business days of any change in price, specifications or other terms negotiated or proposed between Seller and the customer, Seller will notify buyer in writing and will immediately adjust its invoices to reflect any price reduction, provided that no change will be binding on Buyer without Buyer's specific written consent.

*back to top*

13. **Subcontractors**

If the Seller intends to subcontract all or part of the manufacture of the Products to a third-party subcontractor and to locate Tooling (as defined below) on the subcontractor's premises, the Seller will: (a) inform the Buyer in advance in a Written Notice of the identity of the subcontractor and the location of the Tooling; (b) obtain the written permission of the Buyer in advance of the Seller's doing so; (c) inform

the subcontractor in writing that it is a bailee-at-will, through the Seller, of Tooling owned by the Buyer; and (d) be solely responsible for payments to the subcontractor.

*back to top*

14. **Duration and Termination of the Order**

    14.1 **Duration**. The Order shall be effective on the date specified in the Order, or if no date is specified, when issued to Buyer. Unless terminated earlier in accordance with the Terms of the Order:
    14.1.1 the Order shall expire and terminate on the date specified in the Order or, if no date is specified on the face of the Order, and subject to Buyer's termination rights, the Order is binding on the parties for the length of the applicable Original Equipment Manufacturer ("OEM") vehicle program production life (including model refreshes as determined by the applicable OEM customer), and both Buyer and Seller acknowledge the risk of the vehicle program production life being cancelled or extended by the OEM. If the Products are not used in the production of automotive parts or systems, the term of the Order will be for one year from the date the Order is transmitted to Seller. In that event, and still subject to Buyer's termination rights, the Order will automatically renew for successive one-year periods after the initial term unless Seller provides written notice at least 180 days prior to the end of the current term of its desire that the Order not be renewed. However, if an Order includes an expiration date, the term of the Order will continue until that date. Unless specifically waived in writing by an authorized representative of Buyer, Seller's obligations with respect to service and replacement parts will survive the termination or expiration of the Order.

    14.2 **Termination by Buyer**. In addition to any other rights of Buyer to cancel or terminate the Order, and subject to Section 22, the Buyer may terminate the Order in whole or in part by written notice (a "Termination Notice):

    14.2.1 for convenience at any time by not less than thirty (30) days advance written notice to Seller;

    14.2.2 for default, effective upon delivery of the Termination Notice or upon such other date specified by the Buyer in writing. Seller shall be in default if it (i) breaches any warranty or other Term of the Order; (ii) repudiates, breaches or threatens to breach any of the terms of the Order; (iii) fails to deliver, or threatens not to deliver, Products in connection with the Order; (iv) fails to make progress or to meet reasonable quality requirements so as to endanger timely and proper performance of the Order; (v) Seller makes an assignment for the benefit of creditors, or proceedings in bankruptcy or insolvency are instituted by or against Seller; (vi) Seller needs accommodations from Buyer, financial or otherwise, in order to meet its obligations under the Order; or (vii) at any time in the Buyer's sole judgment Seller's financial or other condition or progress on this Order shall be such as to endanger timely performance.

    14.2.3 Termination by Buyer, whether for cause or convenience, shall not relieve Seller of any liability under the Order.

    14.3 **Termination by Seller**. The Seller may terminate this agreement only for non-payment of the purchase price for Products which are sixty or more days past due and material in amount, and then only if: (i) Seller first provides Buyer written notice specifying the amounts past due and (ii) Buyer, within 60 days of such notice, does not either: (x) pay the past due amounts; or (y) notify Seller that the amount claimed to be unpaid are disputed by Buyer. Seller shall terminate under this Section by delivering a written termination notice to Buyer. Seller may not terminate or cancel the Order for any reason except as permitted under this Section.

    14.4 **Seller's Obligations Following Termination**

    14.4.1 Following delivery of a Termination Notice, Seller shall, unless otherwise directed by Buyer and subject to its obligation to provide Transition Support as provided in §14.7:
    14.4.1 terminate promptly all work under this Order and transfer title and deliver to Buyer all finished work completed prior to receipt of the Termination Notice;

    14.4.2 transfer title and deliver to Buyer all work in process, and the parts and materials which Seller produced or acquired in accordance with an Order and any associated Material Releases and which Seller cannot use in producing goods for itself or for others;

    14.4.3 verify/settle all claims by subcontractors for actual costs that are rendered unrecoverable by such termination and provided that the costs charged by subcontractor were reasonably incurred by Seller to produce Products consistent with Material Releases in accordance with an Order and the recovery of materials in Seller's possession is ensured; and

    14.4.4 take actions reasonably necessary to protect property in Seller's possession in which Buyer has an interest until disposal instruction from Buyer has been received.

    14.5 **Buyer's Obligations Following Termination.** Buyer shall pay to Seller in connection with a Termination Notice only the following amounts, without duplication, in complete and final satisfaction of any liabilities relating to this Order:

    14.5.1 The purchase price for all conforming Products received by Buyer prior to the Termination Notice or delivered following the Termination Notice under §14.4.1 and §14.7 or at the direction of Buyer.

    14.5.2 if terminated for any reason other than Default by Seller, Seller's reasonable actual cost of: (i) merchantable and usable work-in-process and the parts and materials transferred to Buyer under §14.4.2 above (but not to exceed the Order price of the Products had the work been completed); (ii) settling claims under §14.4.3; and (iii) carrying out its obligation under §14.4.4.

    14.6 **Limitations on Buyer's Obligations Following Termination**

14.6.1 Buyer's obligations under §14.5 are conditioned upon Seller's furnishing to Buyer, within one month after the date of termination (or such shorter period as may be required by Buyer's customer), a termination claim, which will consist exclusively of the items of Buyer's obligation to Seller that are expressly permitted by this Section. Buyer may audit Seller's records before or after payment to verify amounts requested in Seller's termination claim.

14.6.2 Buyer will have no obligation for and will not be required to pay Seller, directly or on account of claims by Seller's subcontractors, for loss of anticipated profit, unabsorbed overhead, interest on claims, product development and engineering costs, tooling, facilities and equipment rearrangement costs or rental, unamortized capital or depreciation costs or for finished goods, work-in-process or raw materials that Seller fabricates or procures in amounts exceeding those authorized in the Material Releases, or general administrative burden charges from termination of the Order, except as otherwise expressly agreed in a separate Order issued by Buyer.

14.7 **Transition of Supply Following Termination or Expiration**. Following expiration or termination of the Order by either party for any reason (including termination by Seller) and notwithstanding any claimed or actual breach of any obligation by Buyer, Seller will cooperate in the transition of supply to a successor supplier (collectively, "Transition Support"), including the following:

14.7.1 Seller will continue production and delivery of all Products as ordered by Buyer, at the prices and other terms stated in the Order, without premium or other condition, during the entire period reasonably needed by Buyer to complete the transition to the alternate supplier(s), such that Seller's action or inaction causes no interruption in Buyer's ability to obtain Products as needed;

14.7.2 at no cost to Buyer, Seller will promptly provide all requested information and documentation regarding and access to Seller's manufacturing process, including on-site inspections, bill-of-material data, tooling and process detail and samples of Products and components; and

14.7.3 subject to Seller's actual capacity constraints, Seller will provide special overtime production, storage and/or management of extra inventory of Products, extraordinary packaging and transportation and other special services as expressly requested by Buyer in writing. If the transition occurs for reasons other than Seller's termination for default, Buyer will, at the end of the transition period, pay the reasonable, actual cost of the assistance under this §14.7.3, provided that Seller has advised Buyer, prior to incurring such amounts, of its estimate of such costs. If the parties disagree on the cost of Transition Support, Buyer will pay the agreed portion to Seller without prejudice to Seller's right to seek to recover any disputed amounts.

*back to top*

15. **Buyer's Property**

    15.1 **Tooling Order**. If the Order is for tools, dies, fixtures, gages, molds, or patterns, and similar production Goods ("Tooling"), Seller shall design, fabricate, revise, acquire from sources approved by Buyer, and install the Tooling, subject to the terms of this Section15.1-15.14. The term "Tooling" also includes tangible and intangible related drawings, prints, designs, models, and test data of the Tooling. These terms also incorporate and include any additional obligations relating to Tooling which are contained in Buyer's contract with its customer and Seller agrees that Buyer, in its own name, may enforce such obligations on behalf of its customer.

    15.2 **Samples, Quality and Durability**. Seller shall, at its own expense, manufacture a reasonable number of sample Products on the Tooling for inspection or testing by Buyer to ensure the capability of the Tooling to produce the required Products, which meet Buyer's and its customer's applicable quality standards requirements, the applicable North American Standards for Tool Builders as selected by Buyer, TS 16949, AS9100, QS 9000 and all other applicable industry quality and process standards. In addition to Seller's other obligations under these Terms, the Tooling shall be designed and fabricated to be sufficiently durable to permit and support the manufacture of all production and service part requirements through the production and service lifetime of the Product and permit the production of Buyer's subsequent service and replacement requirements. Seller shall submit to Buyer a part submission package, sample Products manufactured with Tooling, and any other tangibles and intangibles requested by Buyer. The Tooling will be deemed to be completed when the necessary samples have been submitted and approved by Buyer, the Products and Tooling have satisfied all PPAP requirements at production run rates, and accepted or approved by Buyer and Buyer's customer. Seller shall furnish to Buyer information of the subcontractor and scope of performance to be subcontracted. No assignment or delegation or attempt thereof shall be valid or effective without Buyer's prior written consent.

    15.3 **Reports and Schedules**. Buyer may request Seller to furnish semi-monthly (or more frequently at Buyer's option) status reports on the construction or acquisition of the Tooling. Each status report must identify the Tooling, identify the subcontractors working on the Tooling, if any, and designate the percentage of completion and/or acquisition and the schedule for completion of each item of Tooling and other deliverables. Seller shall notify Buyer immediately upon becoming aware that the Tooling may not be completed by the completion date specified in the Order and Seller shall furnish to Buyer a schedule of the actions that Seller will take, at Seller's expense, to timely achieve the specified interim and final milestones, deliverables and completion dates.

    15.4 **Title and Identification**. All right, title, and interest in and to any part of the Tooling passes to the Buyer as soon as Tooling is acquired or fabricated in accordance with the Order. All Tooling in the possession of Seller will be at will bailed property. At Buyer's request, Seller shall sign a bailment agreement describing any additional bailment terms for specific Tooling. If the parties do not execute a bailment agreement, Buyer's records regarding the specific Tooling in Seller's possession may be used by Buyer as determinative of the existence, condition, ownership and other aspects of the bailed Tooling. Seller hereby grants Buyer a security interest in any Tooling in which Seller may have an interest and in any contract or right to purchase the Tooling from a third party and, upon Buyer's request, shall obtain subordination agreements in favor of Buyer from any prior perfected secured parties and lien holders. Seller authorizes Buyer to file a financing statement pursuant to Article 9 of the Uniform Commercial Code, any Canadian personal property security legislation, and other law, describing any or all of the bailed Tooling to perfect Buyer's interest in the Tooling. Seller shall: (i) properly store and maintain the bailed Tooling on Seller's premises listed on the Order; (ii)

prominently and permanently mark it as the property of its owner, in accordance with Buyer's instructions; (iii) refrain from commingling it with the property of Seller or with that of a third party; and (iv) adequately insure it against loss or damage. Seller shall not grant or permit any lien or security interest to be asserted against Tooling. Seller shall not loan, sell or assign Tooling or permit it to be subject to any legal process without Buyer's prior written consent. Seller shall indemnify Buyer against any claim adverse or prior to Buyer's ownership or interest in the Tooling, except any claims resulting from any acts or omissions of Buyer. To the extent permitted by law, Seller waives its right to object to the repossession of the Tooling by Buyer in the event Seller is involved in bankruptcy proceedings.

15.5 **Maintenance, Repair, Replacements and Taxes**. Seller, at Seller's expense, shall maintain the Tooling in first class condition and immediately replace any items which are lost or destroyed or become worn out. All repaired or replaced Tooling shall be and remain the property of Buyer. Wear, repair and any necessary refurbishment of the Tooling are Seller's responsibility. None of the Tooling may be removed from Seller's premises without Buyer's written consent. Seller shall be responsible for property tax and any other taxes assessed upon Tooling while in Seller's custody or control.

15.6 **Records**. Seller shall keep at the location of the Tooling all records related to the Tooling, including but not limited to math data, drawings and maintenance records, as Buyer may reasonably require. Buyer may inspect and copy such records upon 24-hour's notice.

15.7 **Use of Tooling**. Seller shall not manufacture, sell, design, or convey any product or property produced, manufactured or assembled with use or assistance of the Tooling to or for any person other than Buyer, except as specifically directed by Buyer in writing for the benefit of Buyer. Seller, at its sole cost and expense, shall furnish appropriate safety systems for Tooling to meet OSHA and any other applicable safety rules and regulations at Seller's responsibility and cost.

15.8 **Risk of Loss and Insurance**. Seller shall be responsible for any and all loss or damage to Tooling, including loss or damage that occurs despite Seller's exercise of reasonable care, until Seller delivers Tooling to Buyer. Seller shall insure Tooling with fire and extended all risk coverage insurance for replacement value thereof for the entire time Tooling is in Seller's possession in accordance with the Order and these terms.

15.9 **Responsibility for Safe Use**. Seller shall use Tooling in a careful and safe manner and shall defend and indemnify Buyer from any claims, liabilities, expenses and damages arising from or related to the installation, use, possession, storage or repair of the Tooling. Seller shall maintain a liability insurance policy and name Buyer as an additional insured.

15.10 **Return**. Tooling may be removed at any time by Buyer, at Buyer's written request, whether or not Buyer and Seller are engaged in litigation or other dispute, in which event Seller shall prepare Tooling for shipment and shall deliver it to Buyer or its Customer in the same or equal condition as originally received by Seller, reasonable wear and tear excepted, all at Seller's expense. Seller shall have no right to retain possession of Tooling to secure payment of amounts owed for Tooling or Products or for any other reason, as a claim for damages is an adequate remedy. Seller waives any statutory, common law, equitable, or other rights to claim a lien on the Tooling provided Buyer tenders any unpaid portion of the purchase price.

15.11 **Disposition**. Seller's tooling and tooling maintenance, care and storage responsibilities under these Terms continues beyond any expiration date of the related Order for production of Products, and specifically includes the full duration of the Seller's service part obligations pursuant to section 3.3 of these terms, above. Seller shall not dispose of the Tooling without prior written notice to, and corresponding written consent from, the Buyer. Seller shall follow Buyer's instructions regarding the disposition or retention of the Tooling and any such instructions must be in a writing signed by Buyer's authorized representative. Upon authorized disposition of the Tooling, Buyer shall receive the full, realized scrap value of the Tooling.

15.12 **Tooling Invoices, Payment, and Prices**. Upon: (i) completion of Tooling as defined in 15.2 above; and (ii) approval by Buyer of the initial samples manufactured by Seller; and (iii) satisfaction of any other conditions specified in the Order, Seller shall invoice Buyer at the billing address on the face of the Order. Payment for Tooling shall be made in accordance with Buyer's normal payment terms unless stated otherwise on the Tooling Purchase Order. Buyer's payment obligation shall be no more than the specified maximum, if any, for: (a) Seller's actual costs for purchased materials and services (including purchased Tooling and portions thereof); and (b) Seller's actual cost for direct labor and overhead. Seller must establish a reasonable accounting system accessible to Buyer that enables ready identification of all Seller's costs.

15.13 **Liquidated Damages**. Time is of the essence, and any delays will result in substantial damages to Buyer. Seller shall pay to Buyer the sum of 1% of the purchase price of the Order for each day of delay of the final completion or any interim scheduled completion or deliverable resulting from any breach of an Order by Seller, not to exceed 10% of the purchase price. This liquidated damage provision is only to compensate for the period of delay referenced and shall not affect Buyer's rights to injunctive and other relief.

15.14 **Injunctive Relief**. The Tooling will be a unique Good which will assist in the production of a unique part or assembly. Buyer is an industry that has exacting standards for validation, delivery, quality, and other performance. The failure to produce or deliver the Tooling in accordance with the requirements of the Order can expose Buyer to significant claims by third parties and a significant loss of business and reputation which will be very difficult or impossible to quantify and for which Seller may be fiscally unable to respond in monetary damages. Whether or not the parties are in a dispute, Buyer shall be entitled to possession of the Tooling on demand and payment of the unpaid purchase price owed Seller under the Order for the Tooling and Buyer shall be entitled to orders for specific performance, preliminary and permanent injunctions and/or other extraordinary relief, which relief shall be cumulative and in addition to any and all other remedies to which any party may be entitled under this Agreement or by law or equity, including but not limited to an ex parte order for possession of the Tooling provided Buyer shall only be entitled to a single full recovery for any breach. Seller waives any requirement for posting of a bond provided that if a waiver is not permitted by law the amount of the bond shall not exceed the unpaid purchase price.

*back to top*

16. **Seller's Property**

16.1  All Tooling and other items that are not Buyer's Property and that are necessary for the production of Products are Seller's Property.

16.2  Seller, at its expense, will furnish, keep in good working condition capable of producing Products meeting all applicable specifications, and replace when necessary, all Seller's Property. Seller will insure Seller's Property with full fire and extended coverage insurance for its replacement value. If Seller uses Seller's Property to produce goods or services similar to Products for other customers, including aftermarket customers, such goods or services will not incorporate any of Buyer's logos, trademarks, trade names or part numbers. Seller will not disclose or imply in its marketing efforts that such goods or services are equivalent to those purchased by Buyer. Seller grants to Buyer an irrevocable option to take possession of and title to Seller's Property that is special for the production of Products under the Order upon payment to Seller of its net book value less any amounts that Buyer has previously paid to Seller for the cost of such items. This option does not apply if Seller's Property is used to produce goods that are the standard stock of Seller or if a substantial quantity of like goods is being sold by Seller to others.

*back to top*

17. **Infringement; Use of Products**

    17.1  Intellectual Property Right means any right arising under U.S. or foreign law relating to patent, trademark, copyright, moral, industrial design right or misuse or misappropriation of trade secrets.

    17.2  Seller warrants that the Products and the sale and/or use thereof (before and after incorporation into Buyer's customer's products) do not and will not infringe any Intellectual Property Rights, United States or foreign.

    17.3  Seller warrants that all Products or other deliverables provided under the Order will be original to Seller and will not incorporate any Intellectual Property Rights of any third party.

    17.4  In addition to its indemnification obligations under §10, Seller waives any claim against Buyer, including any hold-harmless or similar claim, in any way related to a third- party claim asserted against Seller or Buyer for infringement of any Intellectual Property Right.

    17.5  Seller warrants that it is aware of the uses to which the Products are to be put, and grants to Buyer and each party or entity to which the Products are provided, a royalty-free, unrestricted, irrevocable and perpetual license, with a right to sublicense to others (and warrants that Seller has full right to grant said license) to:

        17.5.1  use, repair and reconstruct the Products in any manner;

        17.5.2  to use any additional or background intellectual property owned or acquired by Seller that is necessary or incident to the reasonably intended use or application of the Products.

    17.6  Seller will ensure that the terms of its contracts with its subcontractors and employees are consistent with the terms of this Section.

*back to top*

18. **Inventions**

If Seller, or any person employed by or working under the direction of Seller, in the performance of the Order conceives or first reduces to practice: (i) any invention or any experimental, development or research activities, including engineering related thereto, whether or not patentable, (ii) any reduction to practice of any subject matter, application or discovery which could be patented or copyrighted, or (iii) any improvement in the design of the Products or any alternative or improved method of accomplishing the objectives of this Order (collectively, Inventions), such Inventions shall be owned by Buyer and be deemed confidential and proprietary property of Buyer, whether such Inventions or any portions thereof can be copyrighted or patented or not. Seller shall immediately disclose all Inventions to Buyer and shall cooperate (and cause its employees to cooperate) in executing any documents and taking any other actions necessary or convenient to patent, copyright, assign to the Buyer or otherwise perfect or protect such Inventions for the benefit of Buyer.

*back to top*

19. **Proprietary Information**

    19.1  Any information or knowledge which Buyer may have disclosed or may hereafter disclose to Seller in connection with this Order (including but not limited to the Terms of the Order) and any and all services to be rendered and/or work to be performed pursuant to this Order is and shall be deemed confidential and proprietary information of Buyer. However, Seller shall not, without authorization in writing from Buyer, use, communicate or disclose the confidential and proprietary information of Buyer. Seller agrees to safeguard the confidential and proprietary information of Buyer by using reasonable efforts, consistent with those used in the protection of its own proprietary information of a similar nature, to prevent its disclosure to third parties. Seller agrees to cause its employees, "contractors", officers, directors, agents and representatives to be bound by and comply with the foregoing restrictions regarding the use or disclosure of such confidential and proprietary information. Seller further agrees not to assert any claims with respect to any technical information which Seller shall have disclosed or may hereafter disclose to Buyer in connection with the Products.

    19.2  The restrictions and obligations of §19.1 will not apply to information that: (a) is already publicly known at the time of its disclosure by Buyer; (b) after disclosure by Buyer becomes publicly known through no fault of Seller; or (c) Seller can establish by written documentation was properly in its possession prior to disclosure by Buyer or was independently developed by Seller without use of or reference to Buyer's information. Notwithstanding anything to the contrary in these Terms, any confidentiality or non-

        disclosure agreement between the parties that predates the Order will remain in effect except as expressly modified by the Order, and to the extent of a conflict between the express terms of such an agreement and this Section, the terms of that agreement will control.

19.3    All documents containing proprietary information relating to the Products produced or acquired by Seller under an Order will belong to Buyer. All drawings, know-how, and confidential information supplied to Seller by Buyer and all rights therein will remain the property of Buyer and will be kept confidential by Seller in accordance with §19.1 above.

19.4    Seller shall, within five (5) business days of Buyer's request or the expiration or termination of this Order, return all confidential and proprietary information (including all copies, notes and/or extracts thereof).

19.5    Seller will ensure that any Third Party to whom Seller subcontracts any of the work hereunder is bound by all of the terms and conditions relating to such work to which Seller is bound under an Order.

*back to top*

20. **Insurance; Waiver of Liens**

Seller agrees to furnish to Buyer promptly upon request a certificate from its insurance brokers or agent showing that it carries adequate Workers' Compensation, and Comprehensive General Liability insurance coverage, including Contractual Liability insurance applicable to this Order. The certificate must show the amount of coverage, policy number, and date of expiration and must require the broker or agent to give Buyer thirty (30) days prior written notice of any lapse or cancellation of any policy. Minimum certified coverage shall include:

| COVERAGE TYPE | LIMITS OFLIABILITY |
|---|---|
| Workers compensation | Statutory |
| Employer's liability | US$100,000/each accident, disease policy limit, disease each employee |
| Commercial general liability insurance including contractual liability coverage | US$5,000,000/each occurrence, general aggregate, products & completed operations aggregate |
| Commercial automobile liability insurance | US$1,000,000/each occurrence, combined single limit |
| Business interruption insurance | As specified by Buyer |

Buyer shall also be shown as an Additional Insured on the Comprehensive General Liability policy reflected on the certificate of insurance if services are to be performed on Buyer's premises. If Seller is self-insured for Workers Compensation coverage, it will, if requested by Buyer, provide the applicable state certificate establishing such status to Buyer. Seller hereby waives all mechanics' liens and claims and agrees that none shall be filed or maintained against Buyer's premises on account of any Products and shall cause all its subcontractors, material, men and suppliers (and subcontractors of such parties) to provide similar waivers and agreements in form satisfactory to Buyer.

*back to top*

21. **Force Majeure**

Any delay or failure of either party to perform its obligations will be excused if and to the extent that the party is unable to perform specifically due to an event or occurrence beyond its reasonable control and without its fault or negligence, such as: acts of God; restrictions, prohibitions, priorities or allocations imposed or actions taken by a governmental authority; embargoes; fires; explosions; natural disasters; riots; wars; sabotage; inability to obtain power; or court injunction or order. The change in cost or availability of materials, components or services based on market conditions, supplier actions, labor disruptions or contract disputes will not excuse Seller's performance, and Seller assumes these risks. As soon as possible (but no more than one full business day) after the occurrence, Seller will provide written notice describing such delay and assuring Buyer of the anticipated duration of the delay and the time that the delay will be cured. During the delay or failure to perform by Seller, Buyer may at its option and at Seller's expense: (a) purchase Products from other sources and reduce its schedules to Seller by such quantities, without liability to Seller; (b) require Seller to deliver to Buyer at Buyer's expense all finished goods, work in process and parts and materials produced or acquired for work under the Order; or (c) have Seller provide Products from other sources in quantities and at a time requested by Buyer and at the price set forth in the Order. In addition, Seller at its expense will take all necessary actions to ensure the supply of Products to Buyer for a period of at least 30 days during any anticipated labor disruption or resulting from the expiration of Seller's labor contracts.

*back to top*

22. **Buyer's Liability**

22.1    Buyer's sole liability under the Order (including its termination for any reason, expiration or cancellation) is to pay for the Products in accordance with §5 and, if applicable, to pay the specific termination related amounts described in §§14.5 and 14.7.

22.2    In no event shall Buyer be liable for anticipated profits, interest, or penalties or incidental, consequential, punitive, multiple, or exemplary damages or liabilities in connection with this Order, whether for breach of contract, late payment, property damage, personal injury, illness, or death or otherwise.

*back to top*

23. **Limitation on Assignment.**

    23.1   This Order is issued to the Seller, in reliance upon its personal performance of the duties imposed and by accepting same the Seller agrees not to assign this Order or delegate the performance of its duties hereunder, except for the procurement of raw materials, without prior written consent of the Buyer. Failure to comply with the provisions in this paragraph shall effect, at the option of the Buyer, a cancellation of the Buyer's obligations hereunder without liability.

    23.2   In the event of any approved assignment or delegation authorized by Buyer, Seller retains all responsibility for Products, including all related warranties and claims, unless otherwise expressly agreed in writing by Buyer.

*back to top*

24. **Compliance with Laws and Ethics Policies**

    24.1   Seller, and any goods or services supplied by Seller, shall comply with all applicable federal, state, provincial, and local laws, rules, regulations, ordinances, conventions or standards that relate to the manufacture, sale, labeling, transportation, importation, exportation, licensing, approval or certification, delivery and use of the Products, including without limitation obtaining or making all approvals and filings, complying with country of origin requirements under the North American Free Trade Agreement and any other duty preference programs, and, upon request, Seller will submit to Buyer evidence of such compliance. Seller further represents that neither it nor any of its subcontractors will utilize child, slave, prisoner or any other form of forced or involuntary labor in the supply of goods or provision of services under this contract. At Buyer's request, Seller shall certify in writing its compliance with this provision. Seller agrees to indemnify and hold Buyer harmless from and against any liability claims, demands, fines, penalties or expenses arising from or relating to Seller's noncompliance. If Seller retains subcontractors to perform work on the Products, the Seller will use only subcontractors that will adhere to the requirements of this Section (24.1-24.1.5). The Seller shall monitor subcontractor's compliance. Failure by Seller and/or its subcontractors to adhere to this provision shall be a material breach of the contract and Buyer shall have the right to immediate termination of the contract without liability.

    24.1.1   Seller shall access, review and, with respect to or in relation with all of its dealings with Buyer, comply with the provisions of the "Code of Conduct" promoting respect in terms of people and the environment and the ten principles of the "Safety Health Environment Quality Charter" established by Total. The Seller shall also abide by the "Hutchinson Purchasing Fundamental Business Principles". These documents, with which the Seller represents and confirms it is familiar, are available at **http://www.hutchinsonsealing-purchasing.com.**

    24.1.2   All invoices must carry the following certificate, and Seller agrees to comply therewith as to all Products: "We hereby certify that these Products were produced in compliance with all applicable requirements of Sections 6, 7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof."

    24.1.3   During the performance of this Order, Seller agrees to comply with all provisions of the Equal Opportunity clause (41 CFR 60-1.4(a)); the Affirmative Action Obligations (41 CFR 60-250); the Listing of Employment Openings clause (41 CFR 60-250.4(b) - (h)); the Employment of the Disabled clause (41 CFR 60.741.5); and any applicable laws pertaining to disadvantaged business concerns. Further, Seller agrees to conform to Executive Order 11246, as amended, Section 503 of the Rehabilitation Act of 1973 (29 USC Section 793) and Section 402 of the Vietnam Era Veteran Readjustment Assistance Act (38 USC Section 4012), not to discriminate against any employee or applicant for employment because of race, religion, sex, creed, color, national origin, or disabled or veteran's status, and Seller certifies that it does not maintain any unlawful segregated facilities. This Order shall be deemed to incorporate by reference all the clauses required by the provisions of said regulations and laws and wherever the term "Contractor" is used in said clauses it will be deemed to refer to Seller.

    24.1.4   To the extent that any of the Products are to be used by Buyer in connection with its manufacturing or assembly operations, including any activities incidental thereto, Seller hereby certifies and represents that said Products comply with all applicable rules and regulations issued under the Occupational Safety and Health Act (Public Law 91-596).

    24.1.5   WHMIS, hazard communication labeling and material safety data sheets must precede all shipments of controlled substances.

    24.1.6   To the extent any of the statutory or regulatory provisions cited above are amended, supplemented or replaced, or additional statutory or regulatory provisions are enacted, Seller's obligations under this Order shall be automatically amended to take the same into account and the Seller Documents shall contain all legends and other disclosures required by the same.

*back to top*

25. **Special Situations**

    25.1   In addition to its indemnity obligations under §10.1.7, if Seller performs any work on Buyer's or Buyer's customer's premises or utilizes the property of Buyer or Buyer's customer, whether on or off Buyer's or Buyer's customer's premises, (i) Seller will examine the premises to determine whether they are safe for the requested services and will advise Buyer promptly of any situation it deems to be unsafe; (ii) Seller's employees, contractors, and agents will comply with all regulations that apply to the premises and may be removed from Buyer's premises at Buyer's discretion; and (iii) Seller's employees, contractors, and agents will not possess, use, sell, transfer or be under the influence of alcohol or unauthorized, illegal, or controlled drugs or substances on the premises.


25.2  If the Order includes the removal, moving or installation of production equipment, the following clauses apply:

    25.2.1  Seller agrees that it has inspected the equipment and the site from which it is to be removed or where it will be installed, and that the price includes everything necessary to complete the work, including without limitation the cost of providing access and egress, relocating other equipment, power lines and other utilities, preparing a proper foundation to receive the machinery, and all special permits and equipment required to accomplish the move. If any of the foregoing is to be furnished by Buyer, such items shall have been clearly and specifically identified on the face of the Order. With respect to items or services furnished by Buyer, including without limitation foundations or lifting or moving equipment, Seller agrees to inspect it before use thereof and to be fully and completely responsible for the adequacy thereof.

    25.2.2  Seller or its mover shall provide insurance against any harm to Buyer or its employees, Sellers or the mover's employees, or the public arising out of its activities hereunder. The minimum combined single limit of such insurance is to be $5,000,000, written by an insurer reasonably acceptable to Buyer. In addition, Seller shall maintain Broad Form Property Damage Liability insurance covering the activities described in this paragraph. All policies shall name Buyer as an additional insured.

*back to top*

26. **Remedies**

    26.1  The rights and remedies reserved to Buyer in the Order will be cumulative with and in addition to all other legal or equitable remedies.

    26.2  In any action brought by Buyer to enforce Seller's obligations in connection with the production or delivery of Products or transition support, or for possession of property, the parties agree that Buyer does not have an adequate remedy at law and Buyer is entitled to an immediate order for specific performance of Seller's obligations.
26.3 Buyer shall recover actual attorney's fees (including the cost of in-house counsel) in any action arising out of this Order, unless Seller is the prevailing party.

*back to top*

27. **Miscellaneous**

    27.1  **Jurisdiction and Applicable Law**.

        27.1.1  If the location of Buyer from which this Order issued is in the United States of America: (i) this Order shall be interpreted and enforced in accordance with the local, domestic laws of the State of Michigan, exclusive of the choice of law rules thereof; and (ii) Oakland County Circuit Court or, if subject matter jurisdiction is met, the United States District Court for the Eastern District of Michigan, shall have exclusive jurisdiction and venue over any lawsuit arising out of or related to this Order.

        27.1.2  Seller irrevocably waives and agrees not to raise any objection it might now or hereafter have to any such claim or proceeding in any court having jurisdiction under this Section, including any objection that the place where such court is located is an inconvenient forum or that there is any other claim or proceeding in any other place relating in whole or in part to the same subject matter.

        27.1.3  The United Nations Convention on Contracts for the International Sale of Products shall not apply to this Order.

    27.2  **Waiver**. Either party's failure to insist on the performance by the other party of any term or failure to exercise any right or remedy reserved in this Order, or either party's waiver of any breach or default hereunder by the other party shall not, thereafter, waive any other terms, conditions, rights, remedies, breaches or defaults, whether of the same or a similar type or not.

    27.3  **Severability**. If any provision of this Order, or portion of any provision, is declared or found to be unenforceable, the balance of this Order or such provision shall be interpreted and enforced to the greatest extent possible as if the unenforceable provision or portion had never been a part hereof. In particular, if any interest rate provided for herein is higher than that permitted by applicable law it shall automatically be amended to the highest legal rate.

    27.4  **Survival**. The obligations of Seller to Buyer survive termination of the Order, except as otherwise provided in the Order.

    27.5  **Interpretation**. No provision may be construed against the Buyer as the drafting party. Section headings are for convenience or reference only, and do not affect the meaning of the Order.

    27.6  **No Publicity**. Seller will not advertise, publish or disclose to any third party (other than to Seller's professional advisors on a confidential and need-to-know basis) in any manner the fact that Seller has contracted to furnish Buyer the Products covered by the Order or any terms of the Order (including prices), or use any trademarks or trade names of Buyer in any press release, advertising or promotional materials, without first obtaining Buyer's written consent.

    27.7  **Relationship of Parties**. Seller and Buyer are independent contracting parties and, unless expressly stated otherwise herein, nothing in the Order will make either party the employee, agent or legal representative of the other for any purpose. The Order does not grant either party any authority to assume or to create any obligation on behalf of or in the name of the other. Seller will be solely responsible for all employment and income taxes, insurance premiums, charges and other expenses it incurs in connection with its performance of the Order, except as expressly provided in a written agreement signed by Buyer. All employees and agents of Seller or its respective contractors are employees or agents solely of Seller or such contractors, and not of Buyer,

and are not entitled to employee benefits or other rights accorded to Buyer's employees. Buyer is not responsible for any obligation with respect to employees or agents of Seller or its contractors.

27.8 **Conflict of Interest**. Seller represents and warrants that its performance of the Order will not in any way conflict with any continuing interests or obligations of Seller or its employees or contractors. Seller further warrants that while the Order is in effect, Seller and those of its employees and contractors participating in the performance of the Order will refrain from any activities which could reasonably be expected to present a conflict of interest with respect to Seller's relationship with Buyer or its performance of the Order.